**IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION**

| | |
|---|---|
| LIBERTY CORPORATE CAPITAL, LTD, | ) |
| | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    CASE NO. CV420-179 |
| | ) |
| FIRST METROPOLITAN BAPTIST CHURCH, ALFONZA MCCLENDON, SR., and JANE DOE, | ) |
| | ) |
| | ) |
| | ) |
| Defendants. | ) |
| | ) |

## O R D E R

Before the Court are Defendant Jane Doe and Defendant First Metropolitan Baptist Church's Motion for Summary Judgment (Doc. 37) and Plaintiff Liberty Corporate Capital's Cross Motion for Summary Judgment (Doc. 51).[1] Both motions have been opposed. (Docs. 52, 57.) For the following reasons, Liberty's motion for summary judgment (Doc. 51) is **GRANTED**, and Defendants' motion for summary judgment (Doc. 37) is **DENIED**.

---

[1] Defendant First Metropolitan Baptist Church filed motions to join Defendant Jane Doe's motion for summary judgment and response to Plaintiff Liberty Corporate Capital's cross motion for summary judgment. (Docs. 41, 66.) Liberty has not opposed First Metropolitan's joinder with Jane Doe in these motions. Accordingly, Defendant First Metropolitan's motions for joinder (Docs. 41, 66) are **GRANTED**.

**BACKGROUND[2]**

I.  THE UNDERLYING LAWSUIT

This declaratory judgment action involves a dispute about whether seven insurance policies Liberty underwrote for First Metropolitan from 2011 to 2017 provide coverage for claims Jane Doe brought against First Metropolitan and Alfonza McClendon, Sr., in an underlying state court case (the "Underlying Lawsuit"). (Doc. 1.) First Metropolitan is a Baptist church located in Savannah, Georgia. (Doc. 53 at ¶ 1; Doc. 58 at ¶ 1.) From 1994 until December 12, 2019, Alfonza McClendon served as First Metropolitan's pastor. (Doc. 38 at ¶¶ 1-2; Doc. 54 at ¶¶ 1-2.)

As a child, Jane Doe spent summers with her grandmother in Savannah and attended church at First Metropolitan. (Doc. 38 at ¶¶ 16-18; Doc. 54 at ¶¶ 16-18.) Jane Doe alleges that McClendon subjected her to repeated acts of sexual abuse when she attended

---

[2] The relevant facts are taken principally from the parties' respective statements of undisputed material facts (Doc. 38; Doc. 53), and the responses thereto (Doc. 54; Doc. 58). Pursuant to Federal Rule of Civil Procedure 56(e) and Southern District of Georgia Local Rule 56.1, all material facts not controverted by specific citation to the record are deemed admitted, unless otherwise inappropriate. Where the parties offer conflicting accounts of the events in question, this Court draws all inferences and presents all evidence in the light most favorable to the moving party. See Hamilton v. Southland Christian Sch., Inc., 680 F.3d 1316, 1318 (11th Cir. 2012) (citing Moton v. Cowart, 631 F.3d 1337, 1341 (11th Cir. 2011)).

First Metropolitan. (Doc. 38 at ¶¶ 19-27.) The sexual abuse, Jane Doe alleges, began in summer 2011 and continued until summer 2017.[3] (Id.)

In May of 2020, Jane Doe filed the Underlying Lawsuit against First Metropolitan and McClendon in the State Court of Chatham County. (Doc. 39, Attach. 7.) Jane Doe brought claims against First Metropolitan for negligent training and supervision, negligent retention, negligent failure to report, and negligent infliction of emotional distress. (Id. at ¶¶ 25-49.) Jane Doe also brought claims against First Metropolitan and McClendon for breach of fiduciary duty, punitive damages, and attorneys' fees. (Doc. 39, Attach. 7 at ¶¶ 50-62; Doc. 77, Attach. 12 at 3-4.) The claims in the Underlying Lawsuit all stem from McClendon's alleged sexual abuse of Jane Doe.

---

[3] In her statement of undisputed material facts, Jane Doe makes numerous factual allegations about McClendon's sexual abuse and First Metropolitan's failure to prevent this abuse. (Doc. 38 at ¶¶ 19-27.) For the purposes of this action, Liberty does not dispute whether the sexual abuse occurred or whether First Metropolitan and McClendon are liable in the Underlying Lawsuit. (Doc. 54 at 1 n.1.) Rather, Liberty only disputes whether the relevant insurance policies provide coverage for the Underlying Lawsuit. (Doc. 52 at 1-2.) Accordingly, the facts related to McClendon's sexual abuse, although tragic if true, are mostly immaterial to this action, and the Court will not discuss them in detail.

II.  <u>THE APPLICABLE INSURANCE POLICIES</u>

During the time period in which the sexual abuse allegedly occurred, summer 2011 to summer 2017, Liberty was a primary underwriter on seven insurance policies issued to First Metropolitan. (Doc. 38 at ¶¶ 24, 34-36; Doc. 54 at ¶¶ 24, 34-36.) Specifically, Liberty subscribed to the following policies issued to First Metropolitan:

1. Policy No. 394377: effective from April 14, 2011, to April 14, 2012 (the "2011 Policy")

2. Policy No. LBW394377R1: effective from April 14, 2012, to April 14, 2013 (the "2012 Policy")

3. Policy No. LBW394377R2: effective from April 14, 2013, to April 14, 2014 (the "2013 Policy")

4. Policy No. LBW394377R3: effective from April 14, 2014, to April 14, 2015 (the "2014 Policy")

5. Policy No. LBW394377R4: effective from April 14, 2015, to April 14, 2016 (the "2015 Policy")

6. Policy No. LBW394377R5: effective from April 14, 2016, to April 14, 2017 (the "2016 Policy")

7. Policy No. LBW394377R6: effective from April 14, 2017, to April 14, 2018 (the "2017 Policy")

(collectively referred to as the "Applicable Policies"). (Doc. 53 at ¶ 2; Doc. 58 at ¶ 2.)

The Applicable Policies each contain the same liability coverage insuring agreement, which states in relevant part:

1. Insuring Agreement

> a. We will pay those sums that the insured
> becomes legally obligated to pay as damages
> because of "bodily injury" or "property
> damage" to which this insurance applies.
>
>      ***
>
> b. This insurance applies to "bodily injury" and
> "property damage" only if:
>
> > (1) The "bodily injury" or "property damage"
> > is caused by an "occurrence" that takes
> > place in the "coverage territory";
> >
> > (2) The "bodily injury" or "property damage"
> > occurs during the policy period . . . .

(Doc. 53 at ¶ 6; Doc. 58 at ¶ 6.) Under the Applicable Policies, "occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Doc. 38 at ¶ 38; Doc. 54 at ¶ 38.)

The Applicable Policies also contain a sexual abuse exclusion, which states:

**G. EXCLUSION FOR SEXUAL ABUSE**

> This insurance does not apply to "Bodily Injury" or
> "Property Damage" arising out of any actual or
> alleged sexual or physical abuse, or attempt
> thereof, of or by any person including, but not
> limited to any person whose care is entrusted to
> any "insured."

(Doc. 53 at ¶ 8; Doc. 58 at ¶ 8.) The Applicable Policies, except for the 2017 Policy, also contain an assault and battery exclusion, which states in relevant part:

5

**I.   ASSAULT AND BATTERY EXCLUSION**

This insurance does not apply to under [sic] COVERAGE
A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY and B.
PERSONAL AND ADVERTISING INJURY LIABILITY arising
from:

1.   Assault and Battery committed by any Insured, any
     employee of any Insured, or any other person;

2.   The failure to suppress or prevent Assault and
     Battery by any person in 1. above;

3.   Any Assault or Battery resulting from or
     allegedly related to the negligent hiring,
     supervision or training of any employee of the
     Insured; or

4.   Assault or Battery, whether or not caused by or
     arising out of negligent, reckless or wanton
     conduct of the Insured, the Insured's employees,
     patrons or other persons lawfully or otherwise
     on, at or near the premises owned or occupied by
     the Insured, or by any other person.

(Doc. 53 at ¶ 9.) The assault and battery exclusion was removed

from the 2017 Policy. (Doc. 38 at ¶ 41; Doc. 54 at ¶ 41.)

III. THE DECLARATORY JUDGMENT ACTION AND CROSS MOTIONS FOR

SUMMARY JUDGMENT

On August 7, 2020, Liberty filed this 28 U.S.C. § 2201

action for declaratory judgment against First Metropolitan, Jane

Doe, and McClendon.[4] (Doc. 1.) In its complaint, Liberty alleges

that the claims against First Metropolitan in the Underlying

---

[4] As of this date, Defendant McClendon has not appeared in this
action. Liberty has filed a motion for default judgment against
McClendon which is currently pending before the Court. (Doc.
56.)

Lawsuit are based on purposeful and deliberate conduct rather than an "accident" and, therefore, are not covered by the Applicable Policies' insuring agreement. (Id. at 9.) Liberty further alleges that even if the claims in the Underlying Lawsuit triggered the Applicable Policies' liability coverage, the sexual abuse exclusion precludes coverage. (Id. at 9-10.) Finally, Liberty contends that the assault and battery exclusion included in the 2011 through 2016 policies excludes coverage for the claims asserted in the Underlying Lawsuit. (Id. at 10-11.)

Based on these allegations, Liberty requests a declaration that it owes no duty to defend or indemnify First Metropolitan in the Underlying Lawsuit or against any claims or suits that may have been or may be brought arising out the facts alleged in the Underlying Lawsuit. (Id. at 13.) Liberty also requests a declaration that no coverage exists under the Applicable Policies for punitive or exemplary damages awarded in connection with the Underlying Lawsuit. (Id.) Finally, Liberty asks the Court to award its costs of suit. (Id.)

Now, the Parties bring cross motions for summary judgment. (Docs. 37, 51.) In Defendants' motion for summary judgment, Defendants move the Court to declare, as a matter of law, that the Applicable Policies are required to provide coverage for the negligence claims asserted against First Metropolitan in the

Underlying Lawsuit. (Doc. 37 at 1.) First, Defendants contend that the sexual abuse giving rise to the Underlying Lawsuit is considered an "occurrence" as defined by Georgia law. (Doc. 39 at 10-14.) Second, Defendants contend that the exclusion for sexual abuse provision included in the Applicable Policies does not exclude the negligence claims brought in the Underlying Lawsuit. (Id. at 14-18.) Finally, Defendants argue that coverage is not excluded by the assault and battery exclusion included in the 2011 through 2016 policies. (Id. at 18-21.)

In response, Liberty brings its own motion for summary judgment, arguing that the sexual abuse did not constitute an "occurrence" under Georgia law and, alternatively, that coverage for the Underlying Lawsuit is excluded by either the sexual abuse exclusion or assault and battery exclusion in the Applicable Policies. (Doc. 51; Doc. 52 at 1-2.) The parties' cross motions are now ripe for review.[5]

---

[5] The Court notes that after the parties filed their respective motions for summary judgment, Liberty filed an amended complaint for declaratory judgment. (Doc. 77.) Liberty amended their complaint to address Jane Doe's breach of fiduciary duty claim in the Underlying Lawsuit, which was originally brought solely against McClendon. Normally, the filing of an amended complaint would moot previously filed motions for summary judgment. See Malowney v. Fed. Collection Deposit Grp., 193 F.3d 1342, 1345 n.1 (11th Cir. 1999) (noting that an amended complaint supersedes a previously filed complaint). However, in their motions for summary judgment and responsive briefs, the parties have addressed the breach of fiduciary duty claim. (Doc. 39 at 6;

## STANDARD OF REVIEW

According to Fed. R. Civ. P. 56(a), "[a] party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Such a motion must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Id. The "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial[.]' " Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986) (quoting Fed. R. Civ. P. 56(e) advisory committee's note to 1963 amendment). Summary judgment is appropriate when the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). The substantive law governing the action determines whether an element is material. DeLong Equip. Co. v. Wash. Mills Abrasive Co., 887 F.2d 1499, 1505 (11th Cir. 1989).

As the Supreme Court explained:

---

Doc. 52 at 6.) Accordingly, the Court finds the motions are ripe for disposition.

> [A] party seeking summary judgment always bears the
> initial responsibility of informing the district court
> of the basis for its motion, and identifying those
> portions of the pleadings, depositions, answers to
> interrogatories, and admissions on file, together with
> the affidavits, if any, which it believes demonstrate
> the absence of a genuine issue of material fact.

Celotex, 477 U.S. at 323, 106 S. Ct. at 2553 (quotation marks omitted). The burden then shifts to the nonmoving party to establish, by going beyond the pleadings, that there is a genuine issue concerning facts material to its case. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). The Court must review the evidence and all reasonable factual inferences arising from it in the light most favorable to the nonmoving party. Matsushita, 475 U.S. at 587-88, 106 S. Ct. at 1356. However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Id. A mere "scintilla" of evidence or simply conclusory allegations will not suffice. See, e.g., Tidwell v. Carter Prods., 135 F.3d 1422, 1425 (11th Cir. 1998). Nevertheless, where a reasonable fact finder may "draw more than one inference from the facts, and that inference creates a genuine issue of material fact, then the court should refuse to grant summary judgment." Barfield v. Brierton, 883 F.2d 923, 933-34 (11th Cir. 1989)(citing Samples v. City of Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988)).

**ANALYSIS**

It is undisputed that the Applicable Policies are governed by Georgia law. (Doc. 39 at 9; Doc. 52 at 7.) Under Georgia Law, "insurance is a matter of contract, and the parties to an insurance policy are bound by its plain and unambiguous terms." Richards v. Hanover Ins. Co., 250 Ga. 613, 614, 299 S.E.2d 561, 563 (1983) (citation omitted). "An insurance contract will be deemed ambiguous only if its terms are subject to more than one reasonable interpretation." State Farm Mut. Auto. Ins. Co. v. Staton, 286 Ga. 23, 25, 685 S.E.2d 263, 265 (2009). Although the Court will construe ambiguities in an insurance policy in favor of the insured, "if the language is unambiguous and but one reasonable construction is possible, the court will enforce the contract as written." Sapp v. State Farm Fire & Cas. Co., 226 Ga. App. 200, 201, 486 S.E.2d 71, 73 (1997) (quoting Auto-Owners Ins. Co. v. Barnes, 188 Ga. App. 439, 441, 373 S.E.2d 217, 219 (1988)). Whether ambiguity exists in an insurance policy is a matter of law for the Court to decide. Staton, 286 Ga. at 25, 685 S.E.2d at 265 (2009) (citation omitted).

The parties' cross motions for summary judgment present two issues critical to the Court's determination of whether the Applicable Policies provide coverage for Jane Doe's claims in the Underlying Lawsuit. First, the Court must decide if the

claims in the Underlying Lawsuit are based upon "occurrences" which trigger coverage under the Applicable Policies. Second, if the Court answers the first question in the affirmative, the Court must still consider whether the claims are nevertheless excluded by the Applicable Policies' sexual abuse or assault and battery exclusions. For the reasons outlined below, the Court finds that although Jane Doe's claims are "occurrences," they are subject to the unambiguous language of the Applicable Policies' exclusion for sexual abuse.

I.   THE CLAIMS IN THE UNDERLYING LAWSUIT ARE BASED ON "OCCURRENCES" COVERED BY THE INSURING AGREEMENT

To establish coverage under the Applicable Policies, Defendants must show that claims asserted in the Underlying Lawsuit were "within the risk insured against" by the policy. Allstate Ins. Co. v. Grayes, 216 Ga. App. 419, 420, 454 S.E.2d 616, 618 (1995) (citations omitted). Therefore, setting aside the issue of whether any exclusions would otherwise preclude coverage, "the initial consideration is whether the [Applicable Policies] covered the incident in which [Jane Doe] suffered her injuries." Perry v. State Farm Fire & Cas. Co., 297 Ga. App. 9, 10-11, 676 S.E.2d 376, 378 (2008) (quotation omitted).

The Applicable Policies' insuring agreement provides coverage for "those sums the insured becomes legally obligated

to pay as damages because of 'bodily injury' or 'property damage' . . ." caused by an "occurrence." (Doc. 53 at ¶ 6; Doc. 58 at ¶ 6.) The term "occurrence" is defined in the Applicable Policies as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Doc. 38 at ¶ 38; Doc. 54 at ¶ 38.) Although not defined in the Applicable Policies, "in this context 'accident means an event which takes place without one's foresight or expectation or design.' " Perry, 297 Ga. App. at 11, 676 S.E.2d at 378 (quoting Crook v. Ga. Farm Bureau Mut. Ins. Co., 207 Ga. App. 614, 614, 428 S.E.2d 802, 803 (1993)).

In their cross motions, the parties dispute whether the Underlying Lawsuit alleges an occurrence that would trigger the insuring agreement. (Doc. 39 at 10; Doc. 52 at 17.) Liberty contends that Jane Doe's claims in the Underlying Lawsuit are based upon McClendon's intentional sexual abuse and, therefore, are not "occurrences." (Doc. 52 at 17.) Conversely, Defendants argue that, under Georgia law, whether McClendon's conduct is accidental must be viewed from the perspective of the insured, First Metropolitan. (Doc. 39 at 10-13.) Defendants assert that because First Metropolitan did not intend for Jane Doe to be sexually abused, McClendon's conduct was an "accident" and

satisfies the insuring agreement. (Doc. 39 at 10-11.) On this issue, the Court agrees with Defendants.

Liberty is correct that intentional sexual acts do not constitute an "accident" under general liability policies when committed by the insured. See O'Dell v. St. Paul Fire & Marine Ins. Co., 223 Ga. App. 578, 580, 478 S.E.2d 418, 420 (1996) (finding allegations of sexual harassment and assault and battery against a business owner were not accidents covered by business owner's insurance policies). Yet, as Defendants recognized, "[t]he question of whether an event took place without one's foresight, expectation or design **must be asked from the viewpoint of the insured**." Allstate Prop. & Cas. Ins. Co. v. Roberts, 696 F. App'x 453, 456 (11th Cir. 2017) (emphasis in original) (quotation omitted). Applying this standard, Georgia courts have found that injuries caused by intentional acts were "accidents" for purposes of insurance coverage because the intentional acts were not foreseen by the insured. See, e.g., Cincinnati Ins. Co. v. Magnolia Ests., Inc., 286 Ga. App. 183, 185, 648 S.E.2d 498, 500 (2007) (concluding that nursing home did not foresee violent attack of nursing home resident by fellow resident and the event was "properly characterized as accidental for purposes of coverage"); Crook, 207 Ga. App. at 614, 428 S.E.2d at 803 (finding child's suicide was an "accident" from

14

the perspective of the insured against whom the child's parents asserted a negligence claim).

In the Underlying Lawsuit, Jane Doe does not allege that First Metropolitan had any contemporaneous knowledge of McClendon's sexual misconduct towards Jane Doe. Additionally, the record does not suggest that First Metropolitan "intended or expected that the abuse would occur . . . ." See Allstate Ins. Co. v. Florio, No. 1:19-CV-1174-TWT, 2020 WL 4529618, at *3 (N.D. Ga. Jan. 23, 2020) (finding patient's molestation of another patient in dentist office's waiting room was an "accident" from the perspective of the dentist office). Accordingly, the Court finds that McClendon's sexual abuse was "an 'accident' from the perspective of [First Metropolitan] and constitutes a covered 'occurrence' under the [Applicable Policies]." Id. However, the Court must still consider whether one of the Applicable Policies' exclusions unambiguously bars coverage for the claims.

## II. COVERAGE FOR THE UNDERLYING LAWSUIT IS EXCLUDED BY THE APPLICABLE POLICIES' EXCLUSION FOR SEXUAL ABUSE

"Where an insurance company seeks to invoke an exclusion contained in its policy, it has the burden of showing the facts came within the exclusion." Darby v. Interstate Life & Accident Ins. Co., 107 Ga. App. 409, 409, 130 S.E.2d 360, 361 (1963) (citation omitted). "Exceptions and exclusions to coverage must

15

be construed strictly in favor of the insured and against the insurer." Furgerson v. Cambridge Mut. Fire Ins. Co., 237 Ga. App. 637, 639, 516 S.E.2d 350, 352 (1999) (citing Sovereign Camp, W. O. W. v. Heflin, 188 Ga. 234, 3 S.E.2d 559, 559 (1939)). However, an exclusion that is "plain and unambiguous binds the parties to its terms and must be given effect, even if beneficial to the insurer and detrimental to the insured." Manning v. USF&G Ins. Co., 264 Ga. App. 102, 103, 589 S.E.2d 687, 688 (2003) (citation and quotation omitted).

Here, the Applicable Policies' exclusion for sexual abuse excludes claims "arising out of any actual or alleged sexual or physical abuse . . . of or by any person including[] but not limited to any person whose care is entrusted to any 'insured.' " (Doc. 53 at ¶ 8; Doc. 58 at ¶ 8.) Liberty contends that this exclusion unambiguously bars coverage for the Underlying Lawsuit, which exclusively asserts claims arising out of sexual abuse. (Doc. 52 at 8.) Conversely, Defendants maintain that when read in conjunction with the Applicable Policies' assault and battery exclusion, the exclusion for sexual abuse does not exclude negligence claims such as those set forth in the Underlying Lawsuit. (Doc. 39 at 14-15.) Because the claims asserted in the Underlying Lawsuit arise out of McClendon's

sexual abuse, the Court finds that the exclusion for sexual abuse
bars coverage.

When determining the scope of exclusions, Georgia courts
have interpreted the phrase "arising out of" to include claims
that would not exist but-for the conduct proscribed by the
exclusion. See Capitol Specialty Ins. Corp. v. PTAV, Inc., 331
F. Supp. 3d 1329, 1335-36 (N.D. Ga. 2018) (quoting Barrett v.
Nat'l Union Fire Ins. Co. of Pittsburgh, 304 Ga. App. 314, 321,
696 S.E.2d 326, 332 (2010)) (explaining that Georgia courts
analyse the phrase "arising out of" using the same " 'but for'
test traditionally used to determine cause-in-fact for tort
claims"); see also Cont'l Cas. Co. v. H.S.I. Fin. Servs., Inc.,
266 Ga. 260, 262, 466 S.E.2d 4, 7 (1996) (applying but-for
causation to determine that negligent supervision claim against
law firm and partners "arose out of" lawyer's fraudulent conduct
and fell under exclusionary clause). Thus, the relevant question
is whether Jane Doe's claims in the Underlying Lawsuit would
exist but-for McClendon's sexual abuse. See PTAV, 331 F. Supp.
3d at 1336 (citing Eady v. Capitol Indem. Corp., 232 Ga. App.
711, 713, 502 S.E.2d 514, 516 (1998)).

In this case, all of the claims in the Underlying Lawsuit
trace their origin directly back to McClendon's alleged sexual
abuse of Jane Doe. Notably, Defendants do not argue in their

17

briefs that their claims would exist in the absence of McClendon's misconduct. Rather, Defendants contend that the exclusion does not apply because it does not explicitly exclude negligence claims. (Doc. 39 at 14.) The Georgia Supreme Court previously encountered this argument and found it lacking. See H.S.I., 266 Ga. at 262, 466 S.E.2d at 7 (finding broad exclusion for fraudulent conduct applied equally to negligence claims arising out of fraudulent conduct and explaining that "the exclusionary clause is focused solely upon the genesis of HSI's claims"). Because Jane Doe's injuries would not have occurred but-for McLendon's misconduct, the fact that Jane Doe alleges First Metropolitan may have committed independent acts negligence is of no consequence. Id. ("[T]he exclusionary clause is not at all concerned with whether ancillary acts of less culpable partners may have contributed to the loss . . . ."). Accordingly, the Court finds the claims in the Underlying Lawsuit arose out of McClendon's alleged sexual abuse and, therefore, are excluded from coverage under the Applicable Policies.[6] See Hays v. Ga. Farm Bureau Mut. Ins. Co., 314 Ga. App. 110, 114, 722 S.E.2d 923, 927 (finding "use of a motor vehicle" exclusion

---

[6] In addition to being excluded by the exclusion for sexual abuse, Jane Doe's claim for punitive damages is also unambiguously excluded by the Applicable Policies' punitive or exemplary damage exclusion. (Doc. 53, Attach. 1 at 61.)

applied because injuries would not have occurred but for insured's use of his pick-up truck).

Despite Defendants' arguments, the holding in Ga. Baptist Child.'s Homes & Fam. Ministries, Inc. v. Essex Ins. Co., 207 Ga. App. 346, 427 S.E.2d 798 (1993), does not contradict the Court's conclusion. The underlying litigation in Essex involved the sexual abuse of a child by other residents at a Georgia Baptist Children's Homes and Family Ministries ("GBCH") facility. Id. at 346, 427 S.E.2d at 799. Parents of the child sued GBCH, alleging that the sexual abuse was the direct result of GBCH's negligence in supervising the facility. Id. GBCH requested defense and coverage from Essex, its liability insurance provider, and Essex filed for declaratory judgment that coverage for the claim was excluded under the policy's sexual abuse exclusion. Id. at 346-47, 427 S.E.2d at 800.

The sexual abuse exclusion in Essex precluded coverage for claims "arising out of or resulting from . . . sexual abuse . . . , caused by . . . the insured, his employees, patrons or any causes whatsoever." Id. The Georgia Court of Appeals found the phrase "any causes whatsoever" created ambiguity about whether an attack by GBCH residents was covered under the policy and reversed the trial court's grant of summary judgment to Essex. Id. at 348, 427 S.E.2d at 800. After finding the language

in the exclusion was ambiguous on its face, the Court of Appeals noted that potential ambiguity was also created by the policy's assault and battery exclusion which, unlike the sexual abuse exclusion, specifically excluded claims for negligent supervision. Id.

Defendants contend that, like in the policy at issue in Essex, the Applicable Policies' assault and battery exclusion contains language excluding negligence claims, but this language is absent from the exclusion for sexual abuse. (Doc. 39 at 14-15.) Defendants argue that the omission of this language from the exclusion for sexual abuse demonstrates that negligence claims were not intended to be excluded by that provision. (Id. at 15-16.) The Court disagrees.

The court in Essex ultimately based its holding on the ambiguity created by the phrase "any causes whatsoever," not because the underlying claims were for negligence. Essex, 207 Ga. App. at 348-49, 427 S.E.2d at 800-801. The "any causes whatsoever" language created ambiguity regarding whether the policies covered attacks by other GBCH residents. Id. In contrast, there is no dispute in this case that Jane Doe was a "person whose care is entrusted to any 'insured'" as contemplated by the exclusion for sexual abuse. Therefore, unlike the sexual abuse exclusion in Essex, the exclusion for

20

sexual abuse in this case is unambiguous on its face. Where the language in an exclusion is unambiguous, the Court cannot create ambiguity simply because a separate exclusion more specifically excludes certain types of claims. See Fid. Nat'l Title Ins. Co. of N.Y. v. OHIC Ins. Co., 275 Ga. App. 55, 58, 619 S.E.2d 704, 707 (2005) (finding exclusion that clearly excluded coverage for all claims arising out of conversion, misappropriation, or improper commingling of client funds was not made ambiguous by the qualifying language in separate exclusions for more general misconduct). Accordingly, the dicta in Essex does not persuade the Court that ambiguity exists with respect to whether the exclusion for sexual abuse excludes the claims raised in the Underlying Lawsuit.

Finally, Defendants highlight that Liberty amended the exclusion for sexual abuse in First Metropolitan's 2019 insurance policy to specifically exclude negligence claims from coverage. (Doc. 39 at 16.) However, the 2019 policy, executed well after the occurrence of McClendon's alleged sexual abuse, is extrinsic evidence that cannot be used to contradict the unambiguous language of the Applicable Policies. See Simpson v. Pendergast, 290 Ga. App. 293, 296, 659 S.E.2d 716, 720 (2008) (citation omitted) ("[W]e do not consider any extrinsic evidence of the parties' intent when the contract language is

unambiguous."). Because the Court finds the exclusion for sexual abuse excludes coverage for the claims raised in the Underlying Lawsuit, Liberty's motion for summary judgment (Doc. 51) is **GRANTED,** and Defendants' motion for summary judgment (Doc. 37) is **DENIED.**[7]

### CONCLUSION

Based on the foregoing, Liberty's motion for summary judgment (Doc. 51) is **GRANTED** and Defendants' motion for summary judgment (Doc. 37) is **DENIED.**[8] The Clerk of Court is **DIRECTED** to enter judgment in this matter in favor of Liberty on Liberty's claims against First Metropolitan and Jane Doe, except for an award of costs. This case will remain open pending the resolution of Liberty's motion for default judgment against McClendon.

SO ORDERED this 13th day of September 2021.

_____
WILLIAM T. MOORE, JR.
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

---

[7] Because the exclusion for sexual abuse unambiguously excludes coverage for the claims raised in the Underlying Lawsuit, the Court need not consider whether the claims would likewise be excluded by the assault and battery exclusion.

[8] In her answer, Jane Doe also brings a counterclaim for declaratory relief asking the Court to declare that coverage is available under the Applicable Policies and that the combined policy limits under the Applicable Policies equals $6,000,000.00. (Doc. 78 at 11-12.) Because the Court finds the Applicable Policies do not provide coverage for the Underlying Lawsuit, Jane Doe's counterclaim (Doc. 78) is **DISMISSED AS MOOT.**

22